IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Lewis T. Babcock

Civil Action No. 11-cv-03279-LTB

DAMIAN J. CAMPOS,

      Applicant,

v.

JAMES FALK, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254

---

      This matter is before the Court on Applicant Damian J. Campos' Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (ECF No. 1). Respondents answered the Application (ECF No. 18) and Applicant filed a traverse (ECF No. 10). As Applicant is proceeding *pro se,* I must construe his pleadings liberally and hold him to a "less stringent standard." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)). After reviewing the pertinent portions of the record in this case including the Application, the Answer, the Traverse, and the state court record (ECF No. 17), I conclude that the Application should be denied.

## I.     Background

On March 16, 2006, Applicant was convicted by a jury in the Weld County District

Court of Colorado of vehicular homicide while driving in a reckless manner, and leaving

the scene of the accident resulting in death.  Answer at 6.  The Colorado Court of

Appeals summarized the facts in Applicant's case as follows:

> Defendant lost control of his vehicle while driving a large truck with several passengers inside.  Witnesses testified that defendant seemed to be deliberately weaving across the road and striking construction barrels on the shoulder.  One passenger testified that he and other passengers in the vehicle asked defendant to stop hitting the barrels, but defendant continued.  The vehicle finally flipped and landed on its top.  At trial, an accident reconstruction expert estimated that the vehicle was traveling at sixty-seven miles per hour in a thirty mile per hour zone when it rolled over.  After the accident, all the vehicle's occupants but one fled the scene.  The remaining passenger suffered severe head injuries and died instantly when the vehicle rolled over.
>
> Police arrived at the scene shortly after the accident but did not encounter any of the occupants who fled.  Their investigation led them to the home of defendant's friend, where they found defendant hiding underneath a vehicle parked in the backyard of the house.  The police conducted several interviews of the witnesses present, including defendant.
>
> Before conducting the interview with defendant, the investigating officers called a Spanish-speaking officer to the scene to interpret for them.  The Spanish-speaking officer, Officer Shannon, advised defendant of his rights in Spanish.  Defendant indicated that he was willing to speak with the officers without an attorney present.  During the interview, defendant told the officers that he had not consumed any alcohol after the accident.  Evidence at trial showed that defendant had alcohol in his blood about four hours after the accident occurred.

*People v. Damian Jordan Campos*, No. 06CA1400 (Colo. App. Nov. 21, 2007)

(unpublished opinion).

Following the jury trial, the trial court sentenced Applicant to consecutive

sentences of ten and twelve years.  *Id.*  Applicant filed a direct appeal to the Colorado

Court of Appeals, and the appellate court affirmed his convictions and sentence on

November 21, 2007.  *See Campos*, No. 06CA1400.  The Colorado Supreme Court

denied certiorari review on March 10, 2008.  *See* Pre-Answer Resp. at Ex. 3.  The

mandate issued on March 25, 2008.  *See id.* at Ex. 4.

On April 23, 2008, Applicant filed a post-conviction motion pursuant to Colorado

Rule of Criminal Procedure 35(c) in which he alleged that he received ineffective

assistance of trial counsel.  Answer at 3.  The trial court appointed counsel to represent

Applicant and counsel filed a supplemental post-conviction motion on April 16, 2009.  *Id.*

After a hearing, the trial court denied the motion on August 24, 2009.  *Id.*  The Colorado

Court of Appeals affirmed the trial court on January 13, 2011.  *See People v. Campos,*

No. 09CA2073 (Colo. App. Jan. 13, 2011) (unpublished opinion).  The Colorado

Supreme Court denied certiorari review on May 9, 2011, and the mandate issued on

June 29, 2011.  *Id.*

Applicant initiated the instant action in this Court on December 14, 2011.  In the

Application, he asserted the following claims:

> 1.  He was provided ineffective assistance of counsel because counsel
> failed to obtain a medical expert to testify regarding the effects of a head
> injury Applicant received prior to the accident;
>
> 2.  He was provided ineffective assistance of counsel because counsel
> failed to obtain an expert to testify regarding reconstruction of the accident
> scene; and
>
> 3.  He did not fully understand the state court proceedings because he
> was not provided with a translator that could speak his dialect.

On December 19, 2011, Magistrate Judge Boyd N. Boland entered an order

directing Respondents to file a Pre-Answer Response and address the affirmative

defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court

remedies under 28 U.S.C. § 2254(b)(1)(A) if Respondents intend to raise either or both

of those defenses.  Respondents filed a Pre-Answer Response on January 19, 2012.  In

the Pre-Answer Response, Respondents conceded that the Application was timely

pursuant to 28 U.S.C. § 2244(d), but argued that the claims were procedurally defaulted

as a result of Applicant's failure to exhaust his claims in the state courts.

On February 23, 2012, the Court entered an order dismissing Claims One and

Three as unexhausted and procedurally defaulted.  However, the Court found that

Applicant had exhausted his second claim during the course of his post-conviction

proceeding.  Therefore, the Court directed Respondents to file an Answer that fully

addressed the merits of Claim Two.  The Court also entered an order directing

Respondents to file a complete copy of Applicant's state court proceedings.

Respondents filed the state court record on March 6, 2012, and the Answer on

March 22, 2012.  Applicant submitted a reply on April 13, 2012.  This matter is now fully

briefed and ripe for review.

## II.    Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus

proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle*

*v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

"When a federal district court reviews a state prisoner's habeas petition pursuant to 28

U.S.C. § 2254 it must decide whether the Applicant is in custody in violation of the

Constitution or laws or treaties of the United States.  The court does not review a

judgment, but the lawfulness of the Applicant's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Accordingly, based on denial of certiorari review by the Colorado Supreme Court in Applicant's case, habeas review in this Court is concerned with the proceeding in the Colorado Court of Appeals which was the final substantive proceeding in the state appellate review process.

Because the Application was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), that statute governs the Court's review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir.1999)).  Under AEDPA, a district court may only consider a habeas petition when the Applicant argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The grounds for granting a writ of habeas corpus are very limited: "a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000) (citation

omitted).

A state court decision is "contrary to" clearly established Federal law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent.'" *Price v. Vincent,* 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)). A state court decision involves an "unreasonable application" of clearly established Federal law when "'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the Applicant's case.'" *Lockyer v. Andrade,* 538 U.S. 63, 75 (2005) (quoting *Williams,* 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . . The state court's application of clearly established law must be objectively unreasonable." *Id.* (citing *Williams,* 529 U.S. at 409-10, 412). A "'federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Id.* (quoting *Williams,* 529 U.S. at 411). Finally, when analyzing a petition, all determinations of factual issues by the state court are presumed to be correct and the Applicant has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

III.   **Discussion**

Claim Two is the only claim remaining at issue in this action.  In his second claim, Applicant alleges that he received ineffective assistance of counsel because trial counsel failed to obtain an expert to testify regarding accident reconstruction. Application at 6.  Applicant asserts that he was denied an expert witness because of the state budget.  *Id.*

In addressing this claim during Applicant's post-conviction appeal, the Colorado Court of Appeals found the following:

> The district court observed that counsel, in forming her trial strategy, was initially defending against the offense of vehicular homicide while driving under the influence (DUI).  Vehicular homicide as a result of driving in a reckless manner, the offense defendant was eventually convicted of, was not a charged offense at that time.
>
> The question of whether defendant was driving was not in dispute, and the evidence counsel had at the time she formed her strategy included reports from other passengers in defendant's vehicle and two drivers who witnessed defendant's driving just prior to the crash.  Counsel anticipated that defendant's passengers would testify at trial that defendant had been purposely trying to knock over construction barrels on the side of the road and continued to do so after they told him to stop.  A passenger in a car coming the other way saw defendant swerving back and forth and into her lane of travel.  In order to avoid hitting this vehicle head-on, defendant then swerved off the road, hit an embankment, and rolled the vehicle, resulting in the death of one of his passengers.  Another driver also witnessed defendant's swerving prior to the accident.  There was also strong evidence that defendant had been drinking alcohol.
>
> Defense counsel testified at the postconviction hearing that, in light of the evidence in the discovery, she did not anticipate an outright acquittal at trial.  She instead decided to focus on the DUI aspect of the charge.  She determined as a matter of strategy to pursue a lesser offense in order to give the jury an alternative to the more serious vehicular homicide – DUI charge, rather than risk a conviction outright.  Thus, at defendant's request, the jury was instructed on the lesser non-included offense of vehicular homicide as a result of driving in a reckless manner.
>
> Counsel consulted with senior attorneys in her office, as well as with the public defender's chief trial deputy, regarding whether an expert in

7

accident reconstruction would be helpful in defending the case. She discussed the facts of the case with the deputy, who was responsible for assigning funds for expert witnesses, and together they concluded that expert testimony would not make a significant difference at trial.

Counsel testified that she based this determination on the fact that eyewitnesses could testify as to defendant's driving, and defendant's actual speed was not as important as the manner in which he drove. Counsel did not believe that whether defendant was driving forty-five miles per hour or sixty-seven miles per hour in a thirty-mile per hour speed zone was determinative of the question of recklessness, and she did not want to lose credibility with the jury by disputing an issue that did not mitigate the eyewitness evidence of defendant's erratic driving. She also concluded that an accident expert could not have offered any information as to the amount defendant had to drink or any explanation for why he was seen driving "all over the road."

The record, both of the trial and the postconviction hearing, fully supports the district court's factual findings. Further, while defendant reiterates on appeal the arguments he made in the district court, we conclude that the court properly determined that counsel's choice of defense strategy was reasonable under the circumstances and was not constitutionally deficient.

*Campos*, 09CA2073 at 4-7.

It was clearly established when Applicant was convicted that a defendant has a right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish that his trial counsel was ineffective, Applicant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687-88. In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Applicant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* Under the prejudice prong, Applicant

must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  If Applicant fails to satisfy his burden with regard to either prong of the *Strickland* test, his ineffective assistance of counsel claim must be dismissed.  *See id.* at 697.  Ineffective assistance of counsel claims are mixed questions of law and fact.  *See id.* at 698.

Moreover, strategic decisions of trial counsel are ordinarily shielded from charges of ineffectiveness.  "'Tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.'" *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n. 1 (10th Cir. 2001).  "For counsel's advice to rise to the level of constitutional ineffectiveness, the decision [of counsel] . . . must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy."  *Hatch*, 58 F.3d at 1459 (quotation omitted).  The Court's deference to an attorney's strategic trial decision will stand unless the decision itself was objectively unreasonable.  *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002).  But "[w]here it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *United States v. Nguyen*, 413 F.3d 1170, 1181 (10th Cir. 2005) (citing *Bullock*, 297 F.3d at 1044).

During the post-conviction hearing, Applicant's counsel extensively discussed her trial strategy.  First, she pointed out that, although Applicant had told her the

9

accident occurred when he was retrieving a baseball from the floor of the car, the prosecution had four witnesses who were prepared to testify that the defendant was intentionally driving recklessly before he hit the construction barrel. *See* Trial Court Transcript, 2009-07-20, p. 9. She testified to the following regarding her trial strategy:

> Q   Based on what the defendant was telling you had occurred, coupled with what you were reading in discovery, did you develop a strategy to attack the most serious charge in this case, which would have been the Class 3 felony, vehicular homicide DUI?
>
> A   Yes.
>
> Q   And can you describe for us what your strategy was.
>
>      . . . .
>
> A   As any trial attorney would, our strategy was to try to beat the charge, and we looked at it from several angles. The first would have been whether or not a straight acquittal to the vehicular homicide DUI was a reasonable possibility and I determined that wasn't probably the best way to present this case to the jury.
>
> Q   Why did you conclude that that was not a likely outcome?
>
> A   There was substantial evidence of DUI in this case. There were several different witnesses who testified to different amounts of drinking, but there were witnesses who testified to drinking before the party left for Cheyenne, there were witnesses who testified to drinking while all of the people were in Cheyenne, and there were at least two witnesses who testified to as many as four to six beers being consumed by Mr. Campos while driving home from Cheyenne on that 45-minute to one hour drive.
>
>      And so there was significant and, in my opinion, substantial evidence of drinking, which of course came down to whether or not those witnesses were credible and could be believed. But it was not an insignificant amount of evidence as to drinking before, during and while driving.
>
> Q   Facing those facts, what decisions did you make? What tactical decisions did you make to try and nullify that evidence and achieve

a less serious outcome for the defendant?

A    Well, one of the option you can always give when you're asking a jury to look at whether or not something happened exactly the way the prosecution has presented it, and when you do have some differing stories - - because there were some differences in how much alcohol had been consumed, there was really no one who what testifying that no alcohol had been consumed, but there were some differences in exactly how much.

And in looking at that, it's, I think, a very accepted practice to consider offering lesser offense.  A jury in a case with some pretty substantial evidence is more likely to consider a lesser offense sometimes than they are an outright acquittal.  And that's a decision that you have to make as a trial counsel is whether you are going for the outright acquittal or whether it would be better in your client's defense to try for something less, to mitigate.

He was looking at 24 years on the vehicular homicide/DUI possibly.  I knew my Judge well, I had been in front of him for many years, and I knew that if we were to get a conviction on that vehicular homicide/DUI, Mr. Campos was very likely looking at an aggravated sentence and that could be up to 24 years.  We had to mitigate that.

. . . .

Q    If you could talk for a moment about why you perceive that offering the jury an alternative to the most serious charge, in other worse, a possible compromise verdict, is beneficial to - - was beneficial in that case to your client?

A    Yeah, sometimes it's not.  Sometimes you want to go for the outright acquittal.  And in this case, I did not think that that was the best strategy considering what Mr. Campos was facing, because there was substantial evidence that there had been drinking that day, but there was some differing on how much drinking.

And because there was substantial evidence that there had been some bad driving in this case, I thought that it was important for the jury to have other things that they can consider, because a jury in that situation - - I mean, we have - - these are not the only pictures that are over here to my left.  We had some - - some very uncomfortable and somewhat gruesome pictures from the scene. I knew that would have an effect on the jury.

11

> I knew that the bad driving that was reported by, as I recall, maybe three or four of the witnesses in the case, and the drinking that was reported by two or three of the witnesses in the case, that this was - - this was a time that we needed to give the jury a lesser option in case they might look at drinking in the case, but think that, you know, perhaps that was significant, but maybe not significant enough to convict on that.
>
> Had they not had that lesser option, I think that it was very likely hat the jury may have convicted on the DUI, and giving them that lesser option is something that has been shown many times can be very beneficial to a client in a situation where he's facing many, many years.

Trial Court Transcript, 2009-07-30, p. 9-14.

Ms. Stout also testified that, "very early on in the case" she considered the option of obtaining an accident reconstruction expert. *Id.* at 14. She consulted with Frances Brown, who was responsible for the disbursement of expert witness funds. *Id.* at 14-15. After Ms. Stout discussed the evidence with Ms. Brown, they jointly determined that "it was unlikely that further expert testimony would create a significant difference in the case." *Id.* at 16. Ms. Stout explained the following:

A   Well, a lot of it had to do with the fact that, you know, as was discussed when everyone was here on Tuesday, speeding is not reckless driving per se. And the more important issue in looking at that case was the driving, the testimony of two people in the case, that there may have been some - - some intentional bad driving, and the testimony of the two people outside the car that there - - it appeared that the bad driving was intention, that was more of the

argument for reckless driving because speeding is not reckless driving per se.

Q   Based on your review of discovery, there were witnesses who had put the defendant's speed closer to the 40 to 45 miles per hour that Mr. Cover concluded, correct?

A   The two people in the car? Was that who you're referring to?

Q       Well, actually three people in the car: Mr. Martinez, who was the
        passenger; and then the two other people who talked about the
        intentional bad driving.

A       Yes.

Q       And obviously you knew that Officer Bratton had come up with a
        somewhat higher figure of 67 miles per hour, correct?

A       Yes.

Q       Did you consider that difference between 45 miles and 67 miles
        per hour significant in terms of the outcome of this case?

A       Well, the - - I think that the thing that we looked at is that there
        were things that were more indicative of reckless driving or not
        than that.  Driving 45 - - driving 15 miles over the speed limit
        through a construction zone and having the kind of driving that's
        described, or driving 67 miles through a construction zone, and
        having the kind of driving that's described, I don't think there's a
        significant different for the jury.

        Mr. Furman and I will have to disagree on that, but I don't think
        there's a significant difference for a jury at that point.

        The biggest point as far as the driving was the driving, not the
        speed, in the analysis we did.  And I think that's played out by the
        arguments of counsel at trial because I don't recall arguments
        being made that this was reckless because of the speed; I recall
        the arguments being made that this was reckless because of the
        way the car was being driven.
        . . . .

Q       Therefore, it was the insignificance of the speed calculation a
        factor in your decision, along with Ms. Brown's decision, not to

        pursue funding for an accident - - an expert in accident
        reconstruction?

A       Yes.  And part of that is because it had nothing to do with the DUI
        count with which he was charged.  That's part of the decision, is
        that there was nothing that an accident reconstructionist could
        have done that would have either verified or negated whether or
        not he had four to six beers in the car while driving back from
        Cheyenne, and nothing that they could have done that would have

13

negated whether or not he was intentionally driving all over the road.

Trial Court Transcript, 2009-07-30, p. 16-18.

Ms. Stout also testified that she felt there was a risk associated with spending too much time or emphasis on the difference in speed. *Id.* at 19. In her opinion, spending an inordinate amount of time attempting to convince the jury that Applicant was driving 15 miles over the speed limit instead of 30 miles over would have undermined her credibility. *Id.* at 19-20. In addition, Ms. Stout testified that there were other circumstances to consider that, to her, were more compelling than the speed of the car. She pointed to the fact that all of the passengers of the car fled from the scene, and that Applicant was "found two hours later highly intoxicated, hiding in the backyard of a family member underneath a junked car. [The jury] had to factor all of that into their analysis. This was not a cold analysis of was he doing 67 or was he doing 45. It was so much more than that." *Id.* at 23. Therefore, Ms. Stout expressed the ultimate opinion that hiring an expert in accident reconstruction would not have changed the outcome of Applicant's case. *Id.* at 62.

The state court concluded that Ms. Stout made the reasonable decision that bringing in an expert to testify on a "relatively less significant aspect of the case", or the speed that Applicant was driving at the time of the accident would be an approach that risked conviction on the highest charge of Vehicular Homicide - Driving Under the Influence, and could result in twelve more years in prison for Applicant. *See* Trial Court Record, p. 373. In addition, upon its review of the pleadings and the trial record, the state court concluded that speed was not a significant issue at trial when compared to

14

the issue of the recklessness of Applicant's driving and his level of intoxication.  *Id.* at

376.  The trial court found that there were only two instances in the entire trial when the

police officer's calculation of Applicant' speed was mentioned  – once during the

prosecution's opening statement and once during the police officer's trial testimony.

Therefore, the trial court concluded that the defense strategy was not only reasonable,

but that it ultimately proved to be successful and saved Applicant up to twelve years in

prison.  *Id.*  The state court's factual findings are presumed correct under 28 U.S.C.

§ 2254(e)(1) and are supported by the state court record.  Applicant has not pointed to

any clear and convincing evidence to contradict those findings.

Here, the trial court and the appellate court identified the appropriate Supreme

Court standard set forth in *Strickland v. Washington* and found that trial counsel made

a reasonable strategic decision that additional expert testimony was unlikely to change

the jury's verdict.  Considering the testimony presented during the post-conviction

hearing, the Court finds that trial counsel considered the possibility of obtaining an

accident reconstruction expert, but instead, opted to focus on pursuing the lesser non-

included offense of vehicular homicide as a result of driving in a reckless manner.  The

Court will not second guess this reasonable decision.  *See Chandler v. United States*,

218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (finding that even if the record is incomplete

or unclear about counsel's actions, it is still presumed that counsel exercised

reasonable professional judgment).  Moreover, the mere fact that the defense which

the Applicant's counsel chose to present at trial did not result in an outright acquittal

does not prove ineffectiveness of counsel.  *Id.* at 1314.  As the trial court pointed out,

the defense counsel's decision to offer the lesser non-included offense of vehicular

15

homicide as a result of driving in a reckless manner saved Applicant from a possible additional twelve years of prison time.

Applicant has failed to demonstrate that speed was a critical factor to the jury's decision, and he makes no showing that he was actually denied an expert because of budget issues in the public defender's office.  Therefore, because the Court finds it possible that trial counsel's decision to not present expert testimony was a "difficult but thoughtful tactical decision," the Court must presume that counsel's conduct was "within the range of competency."  *Harris v. Pulley*, 885 F.2d 1354, 1368 (9th Cir. 1988).  Applicant has simply failed to overcome the "strong presumption" that trial counsel's performance falls within the range of "reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Accordingly, in light of all of the above, the Court finds that the appellate court's conclusion was not contrary to or an unreasonable application of federal law and Applicant is not entitled to federal habeas relief on his second claim.

## IV.    Conclusion

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24. Accordingly, it is ordered:

1.    Applicant Damian J. Campos' Application for a Writ of Habeas Corpus Pursuant

16

to 28 U.S.C. § 2254 (ECF No. 1) is denied.

2.      No certificate of appealability will issue because Applicant has not made a

substantial showing of the denial of a constitutional right.

3.      Leave to proceed *in forma pauperis* on appeal is denied with leave to re-file in

the Tenth Circuit.

4.      This case is dismissed with prejudice.

Dated:  May 31, 2012

BY THE COURT:

s/ Lewis T. Babcock

Lewis T. Babcock
United States District Judge